1 | Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
2 | Kristin O'Carroll (SBN 312902)
GREENBERG TAURIG, LLP
3 | 101 Second Street, Suite 2200
San Francisco, California 94105
4 | Telephone: 415.655.1300
Facsimile: 415.707.2010
5 | Michael.Burshteyn@gtlaw.com
Kristin.OCarroll@gtlaw.com
6
Attorneys for Plaintiff,
7 | *Legacy Investments Holdings, LLC*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGACY INVESTMENTS HOLDINGS, LLC, a Delaware limited liability company,<br><br>PLAINTIFF,<br><br>v.<br><br>John Does 1-20,<br><br>DEFENDANTS. | Case No.<br><br>**COMPLAINT FOR CONVERSION, FRAUD, AND VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Legacy Investments Holdings, LLC, a Delaware limited liability company ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint against Defendants John Doe, et al. ("Defendants") and alleges as follows:

**INTRODUCTION**

1. This action arises from the theft of over $28 million in cryptocurrency through a sophisticated scheme where Defendants, unidentified hackers, deployed malicious code to steal over $28,000,000 in digital assets.

2. Plaintiff is a Delaware limited liability company that does business with digital assets and related ventures. On or around June 14, 2023, Legacy Worldwide Investments II, Ltd. ("Victim"), a British Virgin Islands limited company affiliated with Plaintiff, was notified that it had received an opportunity to receive free tokens as an early adopter of a decentralized finance project called ███████ ████████████████████████████ known in the industry as an "air drop."[1] Shortly thereafter, one of the traders working on the ██████ opportunity attempted to claim the airdrop and directed that the token to be transferred to one of the Victim's digital wallets. Unfortunately, the airdrop appears to have contained malicious code that enabled Defendants to gain access to the Victim's cryptocurrency wallet and steal their money. This allowed the hackers to exercise unauthorized control over the funds. The malicious attack occurred by a trader who was employed in the Bay Area in this district.

3. Once inside, Defendants exploited this access to initiate an unsanctioned transfer of 26,197,176.6 USD Coin ("USDC") and 2,500,000 Tether ("USDT") to its own accounts. From there, Defendants funneled the stolen assets, which were worth over $28 million, through a series of protocols and smart contracts to hide the origin of the funds, a pattern that is consistent with a sophisticated money laundering scheme.

4. Plaintiff has diligently investigated, including by hiring private investigators and blockchain forensic investigators, to find the malicious actors and looted funds.

5. Plaintiff's investigation has recently led to tracing of the funds to several platforms, including decentralized finance protocols as well as assets provided by centralized cryptocurrency

---

[1] Plaintiff has been assigned claims by the Victim entity to pursue in this action. This pleading refers to "Plaintiff" in describing the harm done to the victim who has assigned claims to the Plaintiff Company.

exchanges. It appears that the Doe attackers have taken out a complex leveraged short position on a decentralized finance protocol and hold collateral in a specialized version of leveraged Bitcoin issued by a centralized digital asset exchange. Plaintiff believes that its investigation has identified wallets associated with the Doe attackers and the funds at issue.

6. Now, Plaintiff brings this action for injunctive relief, compensatory damages, and punitive damages to recover the stolen funds and for an order enjoining the Doe attackers from dissipating assets and further misconduct.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and, on information and belief, it is an action between citizens of different states.

8. This Court also has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the Computer Fraud and Abuse Act (18 U.S.C. § 1030(a), *et seq*.).

9. This Court also has personal jurisdiction over Defendants because they directed their activity at the State of California, because the malicious airdrop was received in California, and because Plaintiff maintains the accounts they hacked in this jurisdiction.

10. Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims, based on Defendants' conduct, occurred in the Northern District of California, including the receipt of the malicious airdrop, the compromise of Plaintiff's wallet, and the resulting financial harm.

## THE PARTIES

11. Plaintiff is a Delaware limited liability company that does business with digital assets and related ventures.

12. Defendants are unidentified hackers. The true names and capacities of the individuals or entities are presently unknown to Plaintiff. Plaintiff is informed and believes that each Defendant participated in the transactions wherein Defendant deployed malicious JavaScript in order to deprive

Plaintiff of its assets. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

**RELEVANT FACTUAL BACKGROUND**

**A. Background on Cryptocurrency**

13. Digital assets are a form of assets that can be issued and traded on blockchains. Blockchains are distributed, and sometimes decentralized, ledgers that securely record transactions across a distributed network of notes. Each transaction is bundled into blocks of data and is then linked to the previous block and subsequent block, forming a chronological chain. This distributed ledger is shared across many computers (or nodes) in the network and secured by consensus mechanisms that ensure everyone agrees on the public ledger's contents.

14. Crypto assets are usually held in software known as a wallet. A wallet is a secure digital repository that stores private cryptographic keys necessary to engage in blockchain transactions.

15. Businesses transacting in cryptocurrencies often hold large portions of their funds in digital assets known as stablecoins. Stablecoins are typically pegged 1-to-1 to fiat currency such as the United States dollar. This is meant to avoid the sometime more extreme price volatility of other digital assets, known as cryptocurrencies. Relevant here, USD Coin ("USDC") and Tether ("USDT") are two of the most widely used stablecoins. Each is pegged 1:1 with the U.S. dollar. USDC and Tether can be traded on many centralized and decentralized digital asset exchanges and platforms for other digital assets and cryptocurrencies.

16. Airdrops are common when digital asset ventures launch new digital assets, including cryptocurrencies. In the cryptocurrency world, "airdrop" usually means a project distributing token to the wallets belonging to its early adopter users. Some digital asset ventures leverage airdrops as a promotional strategy by sending a small quantity of their new token to people to generate interest in their project. Airdrops may be sent to users who satisfy certain criteria, for instance, such as holding a different cryptocurrency in their wallet.

17. Unfortunately, malicious actors can exploit airdrops to prey on users. They can manipulate websites where users claim airdrops, for instance, to steal the private keys associated with those users' other digital assets or otherwise drain user funds. This can be done through malicious smart contracts that

ACTIVE 713685838v4

appear to be benign but drain funds and send them to a third-party attacker. This sort of attack is unfortunately what occurred here.

### B. Defendants Steal Over $28 Million of Digital Assets

18. As set forth above, the Victim is a company that acquires, holds, and manages digital assets, among other activities. Like many other similar firms, the Victim maintains both traditional financial accounts and blockchain based crypto wallets. This structure supports not only standard operations but also allows the Victim to participate in airdrops.

19. ███████████████████████████████████████████████████████████████ The airdrop was similar to other legitimate airdrops that Victim has claimed and bore the hallmarks of standard early adopter distribution. Because the airdrop appeared to be legitimate, the trader attempted to claim it.

20. The trader used a computer to navigate to a website provided by ███████████. There the trader clicked a link on the website to connect the Victim's blockchain wallet to the airdrop from ███████.

21. Later, the trader noticed that ███████████████████████████████████████████████████████████████████████████████████.

22. An internal review was conducted, and early investigation did not immediately reveal the cause of the loss. The attackers attempted to hide their tracks through use of multiple blockchain wallets and fund movements. They also attempted to hide their identities online.

23. Plaintiff retained security experts to investigate. During subsequent forensic investigations, the Victim discovered that the funds had likely been stolen as a result of a malicious attack. Investigators attributed the unauthorized withdrawals to ██████████████████████████. The investigation included a review of the public blockchain, which contains a timestamp of each transaction, the amount transferred. After review of, among other things, the public ledger, investigators posited that the malicious code allowed Defendants to transfer funds from Plaintiff's wallet to another platform in the following transaction ███████████████████████.

### C. The Attackers Initiate Transfer in Order to Conceal Stolen Funds

24. Investigators traced the path of the stolen funds after they left Plaintiff's control. Blockchain

ACTIVE 713685838v4

tracing revealed that Defendants worked to cloak the origin of the funds and make tracing subsequent transactions more challenging. The stolen funds were moved from an ███ blockchain onto other layer two networks. Once they were on the new networks, Defendants used smart contracts to deposit funds into another ███████████. As shown below, Defendants borrowed additional funds and gained interest on the following transactions:

| Lending Contract Address | Blockchain | Position | Token Amount | USD Amount |
|---|---|---|---|---|
| ███ | ███ | ███ | ███ | ███ |

25. On May 29, 2025, Plaintiff learned that the funds had been transferred to a ███ in the following initial transaction:

███

26. Unfortunately, Defendants were not done interfering with Plaintiff's ability to recover its funds. ███

27. Now, based on the Victim and Plaintiff's investigation efforts, which include blockchain tracing and private investigation, the Victim, and Plaintiff are informed and believed that the attackers are intending to launder the funds through the leveraged position they have opened up in ▮

28. As a result of Defendants' conduct, over $28 million in assets were stolen from the Victim. The Victim has also incurred significant costs in investigating and remediating the attack. The attack has damaged Plaintiff's enterprise value and harmed them through the opportunity cost of the loss of funds.

29. Plaintiff files this action to uncover the identities of the Doe Defendants, enjoin them from dissipating the converted assets, as well as an order for others not to assist in their asset dissipation, and to seek a judgment for the return of the funds along with damages.

## FIRST CAUSE OF ACTION

### (VIOLATION OF 18 U.S.C. §§ 1030(A)(2)(C), 1030(A)(4), AND 1030(5)(C))

### (COMPUTER FRAUD AND ABUSE ACT))

30. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

31. Defendants violated 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), and 1030(a)(5)(C) (the "Computer Fraud and Abuse Act," or "CFAA") by accessing a protected computer without authorization, by doing so knowingly and with an intent to defraud, by furthering fraudulent activity thereby to obtain something of value, and by intentionally accessing a protected computer without authorization and causing Plaintiff damage or loss.

32. The Victim's trader's computer was a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) because it was used in interstate or foreign commerce or communications, including sending and receiving electronic mail, sending and receiving text messages, and accessing and interacting with the internet.

33. Defendants, without authorization, knowingly and with an intent to defraud, accessed the Victim's trader's computer through ▮

34. As a result of this unauthorized access, Defendants obtained from the Victim valuable information, including the private keys to the Victim's digital assets.

ACTIVE 713685838v4

35. Defendants intentionally furthered a fraud by obtaining unauthorized access to the Victim's computer and crypto wallet, so they could falsely assume Victim's identity and access Victim's various accounts in order to steal Victim's digital assets.

36. Defendants intentionally accessed Victim's computer and wallet without authorization and, as a result, caused Victim more than $5,000 in damage or loss, including damage to the Victim's computer systems and infrastructure as well as costs for forensic security investigation and remediation.

37. As a result of Defendants' unauthorized access to Victim's wallet and the information obtained therein, Victim has suffered losses and damages in excess of $28 million plus interest from and after the time of unjust enrichment. The Victim has also incurred significant costs in the form of investigation and remediation costs following Defendants' attack to restore access to Victim's wallet.

38. Plaintiff is empowered to bring this claim under 18 U.S.C. § 1030(g) and is entitled to compensatory damages, injunctive relief, and equitable relief.

## SECOND CAUSE OF ACTION

## (CONVERSION)

39. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraph.

40. Defendants purport to exercise the right of ownership over digital assets unlawfully taken from the Victim as the rightful owner, who has assigned its claims to Plaintiff.

41. Defendants attacked the Victim and took over $28 million in digital assets from Victim without authorization. Defendants exercised and continue to exercise dominion over the assets, despite their belonging to the Victim.

42. Defendants' conversion directly and proximately caused the Victim harm, including loss of digital assets as well as costs of investigation and remediation of Defendants' attack.

43. As a result of Defendants' conversion, the Victim has suffered damages in an amount to be proven at trial, but in no event less than $28 million, plus interest from and after the time of conversion.

///

///

///

ACTIVE 713685838v4

## THIRD CAUSE OF ACTION

## (UNJUST ENRICHMENT)

44. Plaintiff incorporates by reference as though fully set forth herein the allegations in all the foregoing paragraphs.

45. Defendants unlawfully obtained access to Victim's funds and used this access to steal and fully benefit from $28 million in digital assets from Victim.

46. Defendants unjustly retained control over Victim's assets, depriving Victim of its right to withdraw, convert, transfer, or otherwise use over $28 million in digital assets.

47. As a result of Defendants' unjust enrichment, Victim has suffered damages in an amount to be proven at trial, but in no event less than $28 million, plus interest from and after the time of unjust enrichment and the costs of investigation and remediation of Defendants' attack.

## FOURTH CAUSE OF ACTION

## (REPLEVIN)

48. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

49. This is an action to recover personal property. The property at issue is 26,197,176.63 USDC and 2,500,000 USDT.

50. Upon information and belief, the U.S. Dollar equivalent of the personal property as of the date of theft is approximately $28 million.

51. As of the date of this filing, the personal property is believed to be stored in wallets controlled by Defendants or has been laundered through ███████ digital asset exchanges and protocols.

52. At the time of the conversion, Victim owned and had the right to immediately possess the personal property that was taken from it.

53. Defendants intentionally exercised control and continue to exercise control over the digital assets in a way that would exclude Victim from using or possessing them.

54. The property has not been taken for taxation, assessment, or fine pursuant to law nor has it been taken under any execution or attachment against Victim's personal property.

Case No.
COMPLAINT

ACTIVE 713685838v4

55. Plaintiff therefore demands that the wrongfully obtained property be restored to Plaintiff based on the assignment of claims from Victim to Plaintiff.

## FIFTH CAUSE OF ACTION

### (FRAUD)

56. Plaintiff incorporates by reference as though fully set forth herein the allegations in all of the foregoing paragraphs.

57. Defendants sent Plaintiff what appeared to be a legitimate airdrop. Defendants also made representations in writing regarding the ███████████████████████████████████████ Defendant used this fraudulent airdrop to deploy malicious code, which granted Defendants unauthorized access to Plaintiff's wallet. Once inside, Defendants transferred 26,197,176.63 USDC and 2,500,000 USDT to an account owned by Defendants.

58. Defendants' representations regarding the legitimacy of the airdrop were knowingly false and made with the intention of deceiving the Victim.

59. Defendants knowingly made the false representations in order to induce Victim to download the malicious code and allowing Defendants to transfer funds to accounts that are, upon information and belief, held and controlled by Defendants.

60. Victim justifiably relied upon Defendants' false representation that the airdrop was legitimate.

61. As a result of Victim's reliance upon Defendants' false representations, the Victim suffered damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

NOW, THEREFORE, Plaintiff respectfully requests that this Court enter judgment for Plaintiff as follows:

1. For compensatory, incidental, and consequential damages, in an amount to be determined, for harms Plaintiff suffered by Defendants' unlawful conduct, including the $28 million in covered assets Defendants retain and enforcement costs to stop Defendants' unlawful conduct.

2. For punitive and exemplary, and other damages authorized by law.

3. For prejudgment interest and -judgment interest on the full among of damages.

4. For injunctive relief, including an order enjoining Defendants from moving and dispersing Plaintiff's digital assets.

5. For equitable relief in the form of disgorgement and restitution, and creation of a constructive trust to remedy Defendants' unjust enrichment.

6. For costs incurred in order to facilitate the investigation and remediation of the attack.

7. For Plaintiff's attorneys' fees according to proof and costs incurred to the extent permitted by law.

DATED:  October 14, 2025                **GREENBERG TRAURIG, LLP**

By   */s/ Michael Burshteyn*

Michael Burshteyn
Marcelo Barros
Kristin O'Carroll
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com
Kristin.OCarroll@gtlaw.com

Attorneys for Plaintiff
*Legacy Investments Holdings, LLC*

ACTIVE 713685838v4