Michael Burshteyn (SBN 295320)
Marcelo Barros (SBN 339069)
Kristin O'Carroll (SBN 312902)
GREENBERG TRAURIG, LLP
101 Second Street, Suite 2200
San Francisco, California 94105
Telephone: 415.655.1300
Facsimile: 415.707.2010
Michael.Burshteyn@gtlaw.com
Marcelo.Barros@gtlaw.com
Kristin.OCarroll@gtlaw.com

Attorneys for Plaintiff,
*Legacy Investments Holdings, LLC*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGACY INVESTMENTS HOLDINGS, LLC, a Delaware limited liability company,<br><br>            Plaintiff,<br><br>v.<br><br>John Does 1-20,<br><br>            Defendants. | CASE NO.<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF EARLY DISCOVERY, ALTERNATIVE SERVICE, AND APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**<br><br>Hearing:<br>Time:<br>Courtroom: |

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 8

II.    FACTUAL BACKGROUND ............................................................................. 9

       A.     Defendants Steal $28 Million of Digital Assets .................................... 9

       B.     The Attackers Initiate Transfer in Order to Conceal Stolen Funds. ..... 10

III.   PLAINTIFF SHOULD BE PERMITTED TO EFFECTUATE SERVICE ON DOE
       DEFENDANTS BY NFT ................................................................................... 11

IV.    THE COURT SHOULD ENTER AN ORDER AUTHORIZING EARLY DISCOVERY BECAUSE
       OF DOE DEFENDANTS' EFFORTS TO OBFUSCATE THEIR ATTACK AND IDENTITY .. 13

V.     INJUNCTIVE RELIEF IS NECESSARY TO PRESERVE THE STATUS QUO AND PREVENT
       DEFENDANTS FROM DISSIPATING ASSETS. ............................................ 14

       A.     Plaintiff Is Likely to Succeed On The Merits Of His Claims Against The Attackers. ........ 15

              1.     Plaintiff is likely to prevail on its claim for Conversion ...................... 15

              2.     Plaintiff is likely to prevail on its CFAA claim. ................................... 16

              3.     Plaintiff is likely to prevail on its claim for Unjust Enrichment ............. 17

              4.     Plaintiff is likely to prevail on its claim for Replevin ........................... 18

              5.     Plaintiff is likely to prevail on its Fraud claim. ................................... 18

       B.     Plaintiff Will Suffer Irreparable Harm if Relief Is Not Granted ........................... 19

       C.     The Public Interest Favors Injunctive Relief ........................................................ 20

       D.     Notice Is Not Required Here ................................................................................ 21

VI.    CONCLUSION .................................................................................................... 22

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

4

*Allen v. Currier*,
5  No. 20CV1389-JLS(LR), 2023 WL 2728718 (S.D. Cal. Mar. 30, 2023) ........................................... 13

6  *Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...................................................................................................... 14, 20
7

8  *Amaretto Ranch Breedables*,
   2010 WL 5387774 (N.D. Cal. Dec. 21, 2010) ................................................................................ 20

9  *America, Inc. v. Skechers USA, Inc.*,
10  890 F.3d 747 (9th Cir. 2018) ............................................................................................................. 14

11  *Amoco Prod. Co. v. Village of Gambell, Alaska*,
   480 U.S. 531 (1987) ............................................................................................................................ 19
12

*Astrove v. Doe*,
13  2022 WL 2805345 (S.D. Fla. June 17, 2022) ................................................................................... 15

14  *Benda v. Grand Lodge of IAM*,
15  584 F.2d 308, 315 (9th Cir. 1978) .................................................................................................... 15

16  *Bernhardt v. L.A. Cnty.*,
   339 F.3d 920 (9th Cir. 2003) ............................................................................................................. 20
17

18  *Brown Univ. v. Zimet*,
   2017 WL 10543293 (C.D. Cal. Oct. 19, 2017) .................................................................................. 18

19  *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
20  29 F.4th 468 (9th Cir. 2022) .............................................................................................................. 15

21  *In re Celsius Network LLC*,
   No. 22-10964 (MG), 2024 WL 4564196 (Bankr. S.D.N.Y. Oct. 24, 2024) ...................................... 12
22

23  *Chung v. Chih-Mei*,
   No. 22-cv-01983-BLF, 2022 WL 17584243 (N.D. Cal. Dec. 12, 2022) ........................................... 12

24  *Concheck v. Barcroft*,
25  No. 2:10-cv-656, 2010 WL 4117480 (S.D. Ohio Oct. 18, 2010) ...................................................... 20

26  *Council for Educ. & Rsch. on Toxics v. Cal. Chamber of Com.*,
   143 S. Ct. 1749 (2023) ....................................................................................................................... 15
27

28  *Digital Sin, Inc. v. Does 1–5698*,
   No. C 11-04397 LB, 2011 WL 5362068 (N.D. Cal. 2011) ................................................................ 13

CASE NO.
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE,
EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

*F.T.C. v. Affordable Media, LLC*,
179 F.3d 1228 (9th Cir. 1999) ............................................................................................ 20

*Fabian v. LeMahieu*,
No. 4:19-cv-00054-YGR, 2020 WL 3402800 (N.D. Cal. June 19, 2020) ............................ 12

*Facebook, Inc. v. BrandTotal Ltd.*,
499 F. Supp. 3d 720 (N.D. Cal. 2020) ................................................................................ 14

*Fed. Deposit Ins. Corp. v. Garner*,
125 F.3d 1272 (9th Cir. 1997) ............................................................................................ 18

*Fed. Trade Comm'n v. Pecon Software*,
2013 WL 4016272 (S.D.N.Y. Aug. 7, 2013) ........................................................................ 12

*Goldwater Bank, N.A. v. Elizarov*,
No. 22-55404, 2023 WL 387037 (9th Cir. Jan. 25, 2023) ................................................... 18

*Granny Goose Foods Inc. v. Teamsters*,
415 U.S. 423 (1974) ............................................................................................................ 20

*Greene v. Lindsey*
456 U.S. 444 (1982) ............................................................................................................ 11

*Harley-Davidson Credit Corp. v. Monterey Motorcycles, Inc.*,
2012 WL 1309151 (N.D. Cal. Apr. 16, 2012) ..................................................................... 19

*Heissenberg v. Doe*,
2021 WL 8154531 (S.D. Fl. Apr. 23, 2021) .................................................................. 19, 21

*Independent. Living Ctr. of So. Cal., Inc. v. Maxwell-Jolly*,
572 F.3d 644 (9th Cir.2009) ............................................................................................... 20

*Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*,
2013 WL 3622016 (N.D. Cal. July 12, 2013) ..................................................................... 19

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992) .............................................................................................. 13

*Lazor v. Univ. of Conn.*,
560 F. Supp. 3d 674 (D. Conn. 2021) ................................................................................. 20

*LifeScan Scotland, Ltd. v. Shasta Techs., LLC*,
2013 WL 4604746 (N.D. Cal. Aug. 28, 2013) .................................................................... 15

*LVRC Holdings v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) ............................................................................................ 16

*Microsoft Corp. v. Does*,
2021 WL 8444748 (E.D. Va. Aug. 12, 2021) ...................................................................... 16

CASE NO.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

*Mullane v. Central Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ............................................................................................... 11

*Multiven, Inc. v. Cisco Sys., Inc.*,
  725 F. Supp. 2d 887 (N.D. Cal. 2010) .................................................................... 17

*Nibi, Inc. v. Doe*,
  No. 5:24-cv-06184 (N.D. Cal. Jan. 02, 2025) ................................................... 12, 13

*Reno Air Racing Ass'n, Inc. v. McCord*,
  452 F.3d 1126 (9th Cir. 2006) ................................................................................ 21

*Rio Props., Inc. v. Rio Int'l Interlink*,
  284 F.3d 1007 (9th Cir. 2002) ................................................................................ 11

*Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*,
  907 F. Supp. 2d 1086 (N.D. Cal. 2012) .................................................................. 21

*S.F. Bay Area Rapid Transit Dist. v. Spencer*,
  2006 WL 3751428 (N.D. Cal. Dec. 19, 2006) ........................................................ 17

*Sarieddine v. Vaptio, Inc.*,
  2020 WL 8024863 (C.D. Cal. Dec. 2, 2020) .......................................................... 11

*Semitool, Inc. v. Tokyo Electron Am., Inc.*,
  208 F.R.D. 273, 276 (N.D. Cal. 2002) ............................................................... 13, 14

*Sigma Dynamics, Inc. v. E. Piphany, Inc.*,
  2004 U.S. Dist. LEXIS 24261 (N.D. Cal. May 21, 2004) ...................................... 17

*SingularDTV GmbH v. Doe*,
  No. 1:21-CV-06000-VEC, 2021 WL 3668161 (S.D.N.Y. Aug. 16, 2021) ............ 13

*St. Francis Assisi v. Kuwait Fin. House*,
  No. 3:16-cv-3240 (LB), 2016 WL 5725002 (N.D. Cal. Sep. 30, 2016) ................ 12

*Stephens v. Doe*,
  No. 3:23-cv-04183-JD (N.D. Cal. Sept. 13, 2023) ................................................ 13

*Stewart v. City & Cnty. of S.F., Cal.*,
  608 F. Supp. 3d 902 (N.D. Cal. 2022) .................................................................... 15

*Stewart v. City & Cnty. of S.F.*,
  No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023) ................................... 15

*Stil Well v. Defendant "1"*,
  No. 23-21920-CIV, 2023 WL 5670722 (S.D. Fla. Sept. 1, 2023) ......................... 12

*Stormans v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ................................................................................ 20

CASE NO.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

*T–Mobile USA, Inc. v. Terry*,
   862 F. Supp. 2d 1121 (W.D. Wash. 2012) ..........................................................................16

*Trader Joe's Co. v. Desertcart Trading FZE*,
   2023 WL 3959376 (N.D. Cal. June 12, 2023) ....................................................................11

*UBS Fin. Servs. v. Berger*,
   No. 13-cv-03770 (LB), 2014 WL 12643321 (N.D. Cal. Apr. 24, 2014) ............................12

*UMG Recordings, Inc. v. Does 1-4*,
   No. 06-0652 SBA (EMC), 2006 WL 1343597 (N.D. Cal. Mar. 6, 2006) ................... 13, 14

*United States v. Baker*,
   641 F.2d 1311 (9th Cir. 1981) ...........................................................................................15

*United States v. Lichtenstein, et al.*,
   No. 1:22-mj-00022 (D.D.C. Feb 7, 2022) .........................................................................19

*United States v. Nosal*,
   844 F.3d 1024 (9th Cir. 2016) ...........................................................................................16

*United States v. Qin*,
   No. 1:21-cr-00075 (S.D.N.Y. Feb 4, 2021) ......................................................................19

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390, 395 (1981) ...................................................................................................15

*Wakefield v. Thompson*,
   177 F.3d 1160 (9th Cir. 1999) ...........................................................................................13

*Westernbank P.R. v. Kachkar*,
   No. CIV. 07–1606, 2008 WL 8089778 (D.P.R. July 23, 2008) .........................................20

*Williams v. AT&T Mobility, LLC*,
   2020 WL 1492803 (E.D.N.C. Mar. 25, 2020) ..................................................................17

*Winter v. Natural Resources Defense Council, Inc.*,
   555 U.S. 7 (2008) ..............................................................................................................14

*ZG Top Tech. Co. v. Doe*,
   No. C19-92-RAJ, 2019 WL 917418 (W.D. Wash. Feb. 25, 2019) ...................................13

**California Cases**

*CTC Real Est. Servs. v. Lepe*,
   140 Cal. App. 4th 856 (2006) ............................................................................................17

*Engalla v. Permanente Med. Group, Inc.*,
   15 Cal.4th 951 (1997) .........................................................................................................18

CASE NO.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

*Lazar v. Super. Ct.*,
    12 Cal.4th 631 (1996) ................................................................................................ 18

*Lectrodryer v. Seoulbank*,
    77 Cal. App. 4th 723 (2000) ....................................................................................... 17

*Oakdale Vill. Grp. v. Fong*,
    43 Cal. App. 4th 539 (1996) ....................................................................................... 16

*Voris v. Lampert*,
    7 Cal. 5th 1141 (2019) ............................................................................................... 15

**Other State Cases**

*K.A. v. J.L.*,
    450 N.J. Super. 247 (2016) ......................................................................................... 12

**Federal Statutes**

18 U.S.C.
    § 1030(a)(5)(C) .................................................................................................... 16, 17

**California Statutes**

Cal. Civ. Code
    § 1709 .......................................................................................................................... 18

**Other Authorities**

Fed. R. Civ. P. 4 ............................................................................................................... 8, 11

Fed. R. Civ. P. 65(b) ............................................................................................. 15, 20, 21

Rule 26(f) .............................................................................................................................. 13

Rule 45 .................................................................................................................................. 13

CASE NO.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

## I.    **INTRODUCTION**

Plaintiff ("Plaintiff") applies to this Court for relief necessary to prevent unidentified hackers, Defendants John Doe et al. ("Defendants"), from transferring certain stolen funds to place the assets beyond Plaintiff's reach.  As described in greater detail below, Defendants employed a sophisticated scheme to hack into accounts belonging to a victim that has assigned its claims to Plaintiff, stealing over $28 million of the Victim's digital assets.  Although Defendants were initially able to conceal the assets from investigators, a forensic investigation demonstrates that the funds have finally resurfaced in decentralized protocols.  Based on forensic investigations conducted by Plaintiff and the Victim, Plaintiff is informed and believes that the funds are likely to be dissipated through various blockchain based platforms either at Defendants' direction or as a result of market volatility.  Plaintiff initiated this action to recover the stolen funds, but Defendants' persistent efforts to shield the funds from recovery make an otherwise straightforward case far more complex. For this reason, and based on the evidence detailed below and in the declarations from Plaintiff's forensic investigators, Plaintiff requests the following relief:

*First*, Plaintiff requests leave to use alternative service of process on Defendants by delivering a non-fungible token ("NFT") to Defendants' known Ethereum wallet.  Alternative service is necessary because Plaintiff has not yet uncovered the identity of Defendants and is therefore unable to effectuate service of the summons and complaint as prescribed by Federal Rule of Civil Procedure 4.  This alternative is practical, likely to provide actual notice to the Defendants as it directly connects to the wallet used to launder the stolen funds, and necessary given Defendants' successful efforts to conceal their identities.  This service method has been authorized by courts, including multiple courts in the Northern District of California, in similar circumstances.

*Second*, Plaintiff requests an order permitting expedited discovery necessary to identify the Defendants.  These Defendants committed a sophisticated attack that resulted in the theft of $28 million in digital assets.  Plaintiff is seeking leave to issue limited subpoenas directed to certain crypto exchanges and companies that Defendants used to place the stolen funds beyond Plaintiff's control, based on Plaintiff's investigation.  This early discovery is warranted to uncover the details of the attack so that Plaintiff can identify the hacker Defendants and amend its Complaint to identify the legally responsible parties.

*Third*, Plaintiff asks this Court for a Temporary Restraining Order ("TRO") to (1) freeze the

1    account where the stolen assets are located, and (2) preclude Defendants from taking any actions to transfer

2    the stolen funds. Such relief would enable Plaintiff to serve Defendants themselves with a freeze order and

3    also bind third-parties who may hold accounts associated with the stolen funds Defendants are attempting

4    to launder.

5    **II.    FACTUAL BACKGROUND**

6        **A.    Defendants Steal $28 Million of Digital Assets**

7            On or around June 14, 2023, Legacy Worldwide Investments II, Ltd. ("Victim"), a British Virgin

8    Islands limited company, was notified that it had received an "airdrop," or a free token, from a decentralized

9    finance project called ███████████████████████████████████████████████ [1] The

10   airdrop was similar to other legitimate airdrops that Victim has claimed and bore the hallmarks of standard

11   early adopter distribution.  Because the airdrop appeared to be legitimate, the trader attempted to claim it,

12   using a computer to navigate a website provided by ██████████.  There, the trader clicked a link on

13   the website to connect the Victim's blockchain wallet to the airdrop from ██████████.  Later, the

14   trader noticed that over $28 million in other digital assets that the Victim had held had been transferred

15   from the wallet that received the airdrop to another protocol, ██████████  Plaintiff is informed and

16   believes that this account belongs to Defendants.

17           Upon discovering the loss of the funds, the Victim retained a security expert to determine what had

18   occurred.  Investigators traced the unauthorized withdrawals to ████████████████████

19   ██████  The investigators posited that the malicious code allowed Defendants to transfer funds from the

20   Victim's wallet to another platform in the following transaction:

21

22   | Date | Transaction ID |
23   |------|----------------|
24   | ███████████████ | ████████████████████████████████ |

25

26

27

─────────────────────

28   [1] Plaintiff has been assigned claims by the Victim entity to pursue in this action.  This pleading refers to "Plaintiff" in describing the harm done to the victim who has assigned claims to the Plaintiff Company.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**
ACTIVE 715519581v3

**B.      The Attackers Initiate Transfer in Order to Conceal Stolen Funds.**

After the original hack, Defendants began laundering the funds through multiple platforms. Blockchain tracing revealed that Defendants began by bridging the stolen funds from the ███████ blockchain to other ███████████████████████████████████████████████ ████████      Then, Defendants worked to cloak the origin of the funds a by depositing funds into ████████████████████████.      Defendants used the stolen funds as collateral for loans, borrowed additional funds and gained interest on the following transactions:

| Lending Contract Address | Blockchain | Position | Token Amount | USD Amount |
|---|---|---|---|---|
| ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ | | | | |

On or around May 29, 2025, Plaintiff learned that the stolen funds had re-emerged on ████████ ███████████ on the Base blockchain. Unfortunately, Defendants were not done interfering with

10

CASE NO.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

Plaintiff's ability to recover its assets. Once in ████ Defendant exchanged the funds for ████████, an 1:1 ERC-20 token roughly equivalent in value to a Bitcoin, that allows holders to, in effect, use Bitcoin in DeFi ecosystems.  In other words, Defendants immediately exchanged the stolen funds for a tokenized version of Bitcoin. Then, Defendant redeposited the into ████ to collateralize other loans, creating what amounts to a leveraged borrowing loop.  This complicated system of stealing funds and borrowing against them to shield them from recovery underscores why this motion is necessary.

### III.    PLAINTIFF SHOULD BE PERMITTED TO EFFECTUATE SERVICE ON DOE DEFENDANTS BY NFT

Plaintiff moves this Court for an order permitting alternative service of process on Defendants through service of an NFT to Defendants' known Ethereum wallet.  Under Federal Rule of Civil Procedure 4(f)(3), a plaintiff may serve an individual in a foreign country "by other means not prohibited by international agreement, as the court orders."  Fed. R. Civ. P. 4(f)(3).  Under Federal Rule of Civil Procedure 4(h)(2), a plaintiff may serve a foreign corporation in the same manner.  *See* Fed. R. Civ. P. 4(h)(2); *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002).  "[T]he only requirements of Rule 4(f)(3) alternative service are that such service is: (1) ordered by the court, (2) not expressly prohibited by an international agreement, and (3) reasonably calculated to give the defendant notice and an opportunity to be heard, to comport with constitutional notions of due process."  *Sarieddine v. Vaptio, Inc.*, 2020 WL 8024863, at *2 (C.D. Cal. Dec. 2, 2020).  In addition, "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or Rule 4(f)(2)"—it "is neither a last resort nor extraordinary relief."  *Trader Joe's Co. v. Desertcart Trading FZE*, 2023 WL 3959376, at *2 (N.D. Cal. June 12, 2023) (quoting *Rio Props.*, 284 F.3d at 1015).

An alternative method of service is permissible where it is reasonably calculated to apprise the defendants of the pendency of the case.  *See Rio Properties, Inc. v. Rio Intern. Interlink*, 284 F.3d 1007, 1016 (9th Cir. 2002); *Greene v. Lindsey*, 456 U.S. 444, 449 (1982) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.") (citation omitted); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (to satisfy due process, any alternative means of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

action and afford them an opportunity to present their objections.")

Service by delivering an NFT to Defendants' [wallet] is reasonably calculated to give actual notice to Defendants.  While the identities of Defendants are unknown, Plaintiff's investigation has revealed that Defendants regularly use the Ethereum wallets used to launder funds and are thus likely to receive the NFT.  Defendants conducted their scheme to defraud Plaintiff using Ethereum wallets, and concocted complicated crypto leveraging scheme, indicating their familiarity with blockchain technology, further demonstrating the reasonableness of service in this manner.  *K.A. v. J.L.*, 450 N.J. Super. 247, 253 (2016) ("Given that the Facebook and Instagram accounts at issue are the sole conduits of the purported harm, service via Facebook is reasonably calculated to apprise the account holder of the pendency of this action and afford him or her an opportunity to defend against plaintiffs' claims [after service via certified mail was ineffective].")

Other courts have determined that, in similar situations, service by NFT is the means most likely to provide notice to Defendants.  *See, e.g.*, *Nibi, Inc. v. Doe*, No. 5:24-cv-06184, Dkt. 22 (N.D. Cal. Jan. 02, 2025); *Stil Well v. Defendant "1"*, No.  23-21920-CIV, 2023 WL 5670722 (S.D. Fla. Sept. 1, 2023) (authorizing service via transfer of NFT and posting process on a designated serving notice website); *see also In re Celsius Network LLC*, No. 22-10964 (MG), 2024 WL 4564196 (Bankr. S.D.N.Y. Oct. 24, 2024) (authorizing service via NFT to specific wallet addresses.).

Though service via NFT is a newer concept, courts routinely allow other forms of electronic service, such as email or service via social media.  *Chung v. Chih-Mei*, No.  22-cv-01983-BLF, 2022 WL 17584243, at *2 (N.D. Cal. Dec. 12, 2022) ("[C]ourts in this district have authorized service of process by social media."); *Fabian v. LeMahieu*, No. 4:19-cv-00054-YGR, 2020 WL 3402800, at *3 (N.D. Cal.  June 19, 2020); s*ee also St.  Francis Assisi v. Kuwait Fin. House,* No. 3:16-cv-3240 (LB), 2016 WL 5725002, at *2, *3 (N.D. Cal. Sep. 30, 2016) (Twitter (now X)); *UBS Fin. Servs. v. Berger*, No. 13-cv-03770 (LB), 2014 WL 12643321, at *2,*5 (N.D. Cal. Apr. 24, 2014) (LinkedIn); *Fed. Trade Comm'n v. Pecon Software*, 2013 WL 4016272, at *5 (S.D.N.Y. Aug. 7, 2013) ("Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.")

Defendants are malicious attackers who have struck multiple victims and are attempting to conceal their identity to avoid detection.  Any attempts to serve them by traditional service are unlikely to succeed.

These Defendant attackers still use the identified addresses and continue to have access to these accounts. An NFT directing Defendants to a website that contained the service documents and confirming receipt of the documents would consequently reach them and provide them with the constitutionally required notice.

For the reasons set forth above, service via NFT is appropriate.

## IV.  THE COURT SHOULD ENTER AN ORDER AUTHORIZING EARLY DISCOVERY BECAUSE OF DOE DEFENDANTS' EFFORTS TO OBFUSCATE THEIR ATTACK AND IDENTITY.

This Court should authorize Plaintiff to serve early discovery to identify the unknown attackers. Courts have "broad discretion" to order expedited discovery. *Allen v. Currier*, No. 20CV1389-JLS(LR), 2023 WL 2728718, at *3 (S.D. Cal. Mar. 30, 2023) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "Expedited discovery under Rule 45 is appropriate when good cause for the discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." *UMG Recordings, Inc. v. Does 1-4*, No. 06-0652 SBA (EMC), 2006 WL 1343597, at *1 (N.D. Cal. Mar. 6, 2006) (citing *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002) (granting expedited discovery under a "balance of hardships" analysis)).

Good cause exists to authorize limited third-party discovery to uncover Doe Defendants' identities and other information that will enable Plaintiff to identify how the attack occurred. Further, this discovery would empower the Victim to protect itself from further victimization prior to the Rule 26(f) conference in this case. Courts permit accelerated discovery "in the interests of justice" where it is necessary to identify Doe defendants as Plaintiff seeks to do here. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) ("[T]he district court erred in dismissing [plaintiff's] complaint against Doe simply because [plaintiff] was not aware of Doe's identity at the time he filed his complaint."); *Stephens v. Doe*, No. 3:23-cv-04183-JD, Dkt. 28 (N.D. Cal. Sept. 13, 2023); *Nibi, Inc, supra,* No. 5:24-cv-06184, Dkt. 22 at p. 3; *ZG Top Tech. Co. v. Doe*, No. C19-92-RAJ, 2019 WL 917418, at *2 (W.D. Wash. Feb. 25, 2019); *SingularDTV GmbH v. Doe*, No. 1:21-CV-06000-VEC , 2021 WL 3668161, at *1 (S.D.N.Y. Aug. 16, 2021); *see also Digital Sin, Inc. v. Does 1–5698*, No. C 11-04397 LB, 2011 WL 5362068 (N.D. Cal. 2011) (granting leave to subpoena internet service provider to identify Doe defendant).

Here, Doe Defendants' identities are essential to prosecution of its claims. *See Wakefield*, 177 F.3d

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

at 1163.  Information from exchanges through which the attackers disbursed the proceeds and laundered the funds gained through their attack as well as from other victims is highly relevant as well.  Where discovery will "substantially contribute to moving th[e] case forward[,]" as here, courts grant it.  *Semitool*, 208 F.R.D.  at 277.  The attackers may have left details that help to identify them during their abuse of the exchanges and other internet services.

Further, early discovery is also warranted because it is likely that Doe Defendants will attempt to hide evidence of their attack, reducing the chance of catching them and increasing the likelihood that they will launch a similar attack against another party.  Discovery will make it more likely the attackers will be apprehended and stopped from making off with the stolen assets.

Granting Plaintiff's request for early third-party discovery would not prejudice any of the Doe Defendants in any way.  Plaintiff's request is limited in scope to information relevant to its claims that would identify the Doe Defendants and their methods of attack.  Plaintiff will use this information to name the Defendants in the case, serve them, and move the case forward.  In such contexts, courts find that the good cause for expedited discovery of Doe defendants' identities "outweighs any prejudice" they may face. *See UMG Recordings*, 2006 WL 1343597, at *1 (concluding that good cause for expedited discovery of Doe defendants' identities "outweighs any prejudice . . . for several reasons"); *Semitool*, 208 F.R.D.  at 277.

## V.    INJUNCTIVE RELIEF IS NECESSARY TO PRESERVE THE STATUS QUO AND PREVENT DEFENDANTS FROM DISSIPATING ASSETS.

The Court should issue a temporary restraining order enjoining Defendants from moving or further dissipating the stolen funds. The legal standard for a temporary restraining order is substantially identical to the standard for a preliminary injunction. *Facebook, Inc. v. BrandTotal Ltd.*, 499 F. Supp. 3d 720, 732 (N.D. Cal. 2020).  In order to obtain a temporary restraining order or preliminary injunction, a plaintiff must demonstrate: (1) its case is "likely to succeed on the merits," (2) "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of equities tips in [plaintiff's] favor," and (4) "an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008); *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018).  The Ninth Circuit evaluates these factors on a "sliding scale," such that "a stronger showing of one element may offset a weaker showing of another." *Alliance for the*

*Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the "sliding scale" approach, "'serious questions going to the merits' and a balance of hardships that tips sharply toward the plaintiff can support the issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135. "Federal courts across the country . . . routinely issue freeze and transfer orders that extend to both defendants and third parties with custody or control over [digital] assets." *Astrove v. Doe*, 2022 WL 2805345, at *2 (S.D. Fla. June 17, 2022) (collecting cases).

Plaintiff intends to provide actual notice of the Court's order directly to the digital asset exchanges identified above that Defendants are attempting to use to profit from and dissipate the unlawfully misappropriated assets, per Rule 65(d)(2). *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 483 (9th Cir. 2022) ("Federal Rule of Civil Procedure 65(d)(2) allows district courts to enjoin not just the parties and their affiliates, but also others who are 'in active concert or participation' with them."), *cert. denied*, *Council for Educ. & Rsch. on Toxics v. Cal. Chamber of Com.*, 143 S. Ct. 1749 (2023)*; United States v. Baker,* 641 F.2d 1311, 1314 (9th Cir. 1981) (holding non-parties in privity with parties are bound by injunction upon notice); *see also LifeScan Scotland, Ltd. v. Shasta Techs., LLC,* 2013 WL 4604746, at *5 (N.D. Cal. Aug. 28, 2013) ("[A] nonparty may be held in contempt of an injunction after an assessment of the nonparty's behavior and relations to the enjoined party.")

The standard is met here.

### A.    Plaintiff Is Likely to Succeed On The Merits Of His Claims Against The Attackers.

To establish a likelihood of success, Plaintiff "need not conclusively prove their case or show that they are 'more likely than not' to prevail." *Stewart v. City & Cnty. of S.F., Cal*., 608 F. Supp. 3d 902, 911 (N.D. Cal. 2022) (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)), aff'd sub nom. S*tewart v. City & Cnty. of S.F.*, No. 22-16018, 2023 WL 2064162 (9th Cir. Feb. 17, 2023). Instead, Plaintiff need only show a "fair chance" of success. *Stewart*, 608 F. Supp. 3d. at 911 (citing *Benda v. Grand Lodge of IAM*, 584 F.2d 308, 315 (9th Cir. 1978)). Here, Defendants' conduct provides a clear basis for imposing a TRO.

### 1.    Plaintiff is likely to prevail on its claim for Conversion.

Plaintiff's conversion claim is based on Defendants' theft of $28 million in digital assets from the Victim's account. (Julia Gottesmann Decl. ¶ 2.) Conversion is "the wrongful exercise of dominion over

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

personal property of another." *Voris v. Lampert,* 7 Cal. 5th 1141, 1150 (2019) (citations omitted).  To state a claim for conversion under California law, a plaintiff must show: "(a) plaintiff's ownership or right to possession of personal property, (b) defendant's disposition of property in a manner inconsistent with plaintiff's property rights, and (c) resulting damages." *Id*. (citations omitted).  "It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use."  *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 544 (1996).

Plaintiff is likely to succeed on its conversion claim.  Plaintiff held a clear interest in the stolen assets, which were unlawfully accessed and transferred by Defendants.  By taking control of the assets for their own purposes, Defendants have wrongfully exercised dominion over the assets.  This unauthorized disposition resulted in immediately financial harm to Plaintiff.

### 2.    Plaintiff is likely to prevail on its CFAA claim.

Plaintiff is likely to prevail on its claim for violation of CFAA. The statute applies to "protected computers" which includes any computer connected to the internet, including the computer the Victim's trader used to access the malicious airdrop. Here, Defendants deceived Plaintiff and caused it to execute malicious code that surreptitiously extracted information without permission.  By gaining unauthorized access to Plaintiff's wallet, Defendants violated at least three provisions of the statute:

**Section 1030(a)(2)(C)**: Defendants' deployment of ███████████ to loot Plaintiff's assets is a clear violation of Section 1030(a)(2)(C). A defendant violates Section 1030(a)(2)(C) when they "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."  A person uses a computer "without authorization" when they "ha[ve] not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission) . . . ." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009).  Here, Defendants intentionally accessed multiple of Plaintiff's personal "protected computer" within the meaning of Section 1030(e)(2), their access was without authorization and required overcoming technical barriers, and they obtained information in the form of passwords and other private data by doing so. *See T–Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1130 (W.D. Wash. 2012); *Microsoft Corp. v. Does*, 2021 WL 8444748, at *5 (E.D. Va. Aug. 12, 2021) (collecting cases holding accessing accounts to steal confidential information violates the

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

CFAA), *report and recommendation adopted*, 2021 WL 8444640 (E.D. Va. Sept. 24, 2021).  This misconduct is therefore likely to prevail on this claim.

**Section 1030(a)(4):**  A defendant violates Section 1030(a)(4) when she acts "knowingly and with intent to defraud" and "further[ed] the intended fraud and obtain[ed] anything of value."  *See United States v. Nosal*, 844 F.3d 1024, 1032 (9th Cir. 2016).  Here, Defendants accessed Plaintiff's accounts with the purpose of fraudulently impersonating an authorized accessor and stealing the Victim's digital assets. Defendants acted deliberately to deceive Plaintiff and steal crypto stored in or accessible via a protected computer, thus violating CFAA Section 1030(a)(4).  *See Multiven, Inc. v. Cisco Sys., Inc.*, 725 F. Supp. 2d 887, 890 (N.D. Cal. 2010).

**Section 1030(a)(5)(c)**: Even if the Court finds that fraudulent intent is lacking (it should not) Plaintiff is likely to prevail under Section 1030(a)(5)(c), which prohibits intentionally accessing a "protected computer" without authorization and, as a result, causing "damage and loss." 18 U.S.C. § 1030(a)(5)(C). The malicious code introduced by Defendant into Plaintiff's system compromised the availability of Plaintiff's digital assets. Courts have held that financial loss, including costs of investigation, mitigation, securing digital infrastructure, meets the definition of loss. *see* 18 U.S.C. § 1030(a)(5)(C); *see, e.g.*, *Williams v. AT&T Mobility, LLC*, 2020 WL 1492803, at *7 (E.D.N.C. Mar. 25, 2020) (finding inability to access $6,500 transferred to Coinbase account qualified as "loss" under the CFAA, in addition to money spent on new devices, plane tickets, and other remedial costs). As a result of Defendants' intentional and unauthorized access, Plaintiff suffered damage to his digital wallets and loss of his digital assets and is likely to succeed on this claim as well.

**3.      Plaintiff is likely to prevail on its claim for Unjust Enrichment**

Plaintiff is likely to prevail on its claim for unjust enrichment because the uncontroverted evidence demonstrates that Defendants unjustly enriched themselves by deploying malicious code to steal Plaintiff's funds. To state a claim for unjust enrichment, a plaintiff must demonstrate (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another. *S.F. Bay Area Rapid Transit Dist. v. Spencer*, 2006 WL 3751428, at *1 (N.D. Cal. Dec. 19, 2006) (citing *Sigma Dynamics, Inc. v. E. Piphany, Inc*., 2004 U.S. Dist. LEXIS 24261, at *1, *15 (N.D. Cal. May 21, 2004); *Lectrodryer v. Seoulbank*, 77 Cal. App. 4th 723, 726 (2000)). This standard is easily satisfied here. Defendants used a sophisticated attack to deprive the Victim of their funds, and, in doing so, receive the benefit of over $28 million in crypto assets that they unlawfully

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

converted. Allowing Defendants to benefit from this unlawful conduct is unjust and would undermine the fundamental principles of justice and equity. Plaintiff is likely to prevail for this reason.

### 4.    Plaintiff is likely to prevail on its claim for Replevin

By its claim for replevin, Plaintiff seeks to recover property that Defendants wrongfully seized. "A victim of theft is entitled to recover the assets stolen or anything acquired with the stolen assets, even if those assets have a value that exceeds the value of that which was stolen." *CTC Real Est. Servs. v. Lepe*, 140 Cal. App. 4th 856, 860-61 (2006).  Here, Defendants had possession of the wrongfully seized digital assets at the time this action was filed. Plaintiff is informed and believes that Defendants continue to hold such property and are able to deliver such property to Plaintiff. As such, Plaintiff is likely to succeed on his claim of replevin. *Brown Univ. v. Zimet*, 2017 WL 10543293, at *2 (C.D. Cal. Oct. 19, 2017) (finding plaintiff was likely to succeed in claim of replevin where he offered allegations and supporting evidence that defendant had stolen from it and issuing a temporary restraining order).

### 5.    Plaintiff is likely to prevail on its Fraud claim.

Plaintiff seeks to recover the stolen funds that Defendant procured through their fraudulent conduct. In California, the elements of fraud are (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage. *Engalla v. Permanente Med. Group, Inc.*, 15 Cal.4th 951, 973–74 (1997); *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996); *see also* Cal. Civ. Code § 1709 ("One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."). Here, Defendants represented that they were providing the Victim with a legitimate airdrop when, in fact, they were deploying malicious code. They were undoubtedly aware of the falsity of the representation, clearly intending to steal the funds for their benefit. This is plain from the nature of the misconduct, their pattern with previous hacking incidents, and the complicated laundering scheme they used after the theft was accomplished. The airdrop appeared to be legitimate, bearing the hallmarks of legitimate airdrop transactions, and the Victim's reliance on the misrepresentations was reasonable under these circumstances. Defendants' intentional fraud caused the Victim to lose over $28 million in cryptoassets.

Thus, Plaintiff is likely to prevail on its claim for fraud, and a TRO should issue.

///

///

CASE NO.
**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**
ACTIVE 715519581v3

**B.      Plaintiff Will Suffer Irreparable Harm if Relief Is Not Granted**

An injunction will stop Defendants from using crypto platforms based in the United States to launder the funds and unjustly enrich themselves while risking loss or dissipation of the Victim's assets.  An injunction can be served on Defendants and the platforms that Defendants are using to prevent Defendants from continuing to transfer or borrow against the stolen funds.  The Ninth Circuit has recognized that "[d]issipation of assets can create a likelihood of irreparable harm." *Goldwater Bank, N.A. v. Elizarov*, No. 22-55404, 2023 WL 387037, at *2 (9th Cir. Jan. 25, 2023) (affirming district court's grant of preliminary injunction where record indicated defendant likely intended to transfer or alienate plaintiffs' assets); *Fed. Deposit Ins. Corp. v. Garner*, 125 F.3d 1272, 1280 (9th Cir. 1997) (affirming district court's finding of likelihood of irreparable harm where there was "at least a possibility" of dissipation of assets absent an asset-freezing injunction); *see also Harley-Davidson Credit Corp. v. Monterey Motorcycles, Inc.*, 2012 WL 1309151, at *3 (N.D. Cal. Apr. 16, 2012) ("[T]he possibility that a defendant will dissipate assets which could satisfy a judgment can constitute irreparable harm.").

Courts have also found the risk of harm sufficient to support a preliminary injunction where defendants are "in the process of dissipating assets, or are strategizing to do so in the future," as support for granting preliminary relief. *Innovation Ventures, LLC v. Pittsburg Wholesale Grocers, Inc.*, 2013 WL 3622016, at *2 (N.D. Cal. July 12, 2013).  "In each case, a court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Prod. Co. v. Village of Gambell, Alaska*, 480 U.S. 531, 542 (1987).  The risk of harm is particularly acute here. As set forth above, the stolen funds are, in essence, being used as collateral on loans. This leveraged borrowing loop coupled with the inherent volatility of the crypto market put the assets in a very precarious position. If the market falls suddenly, as it in wont to do, there could be a forced liquidation, irreversibly dissipating the stolen assets. In other words, all of the stolen assets could be wiped out by market fluctuations, allowing the stolen assets to vanish or be diverted to unknown parties, effectively enabling Defendants to completely disappear and avoid detection.

The burden on Defendants, on the other hand, is minimal.  Defendants will merely need to refrain from transferring or dissipating funds to which they are not entitled.  Given the nature of digital assets, now that Defendants' conduct has been revealed, they can quickly act to dissipate these assets. *See, e.g.*, *Heissenberg v. Doe*, 2021 WL 8154531, at *2 (S.D. Fl. Apr. 23, 2021).  ("[C]onsidering the speed with which [digital asset]

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**

ACTIVE 715519581v3

1   transactions are made as well as the anonymous nature of those transactions, Plaintiff has good reason to believe

2   the Defendant will hide or transfer his ill-gotten gains beyond the jurisdiction of this Court unless those assets

3   are restrained."); *United States v. Qin*, No. 1:21-cr-00075 (S.D.N.Y. Feb 4, 2021), ECF No. 2 ¶¶ 7, 11

4   (demonstrating the ease of dissipating misappropriated digital assets); *see also United States v. Lichtenstein et

5   al.*, No. 1:22-mj-00022 (D.D.C. Feb 7, 2022), ECF No. 1-1 ¶¶ 8-10 (same).

6           **C.     The Public Interest Favors Injunctive Relief**

7           The public interest favors injunctive relief where it serves to prevent the continued theft and misuse of

8   stolen funds and would help deter similar unauthorized intrusions.   "The public interest portion of the

9   preliminary injunction test asks 'whether there exists some critical public interest that would be injured by the

10  grant of preliminary relief.'" *Amaretto Ranch Breedables*, 2010 WL 5387774, at *3 (N.D. Cal. Dec. 21, 2010)

11  (quoting *Independent. Living Ctr. of So. Cal., Inc. v. Maxwell–Jolly*, 572 F.3d 644, 659 (9th Cir.2009)); *All. for

12  the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1138 (9th Cir. 2011).

13          "When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-

14  parties, the public interest will be 'at most a neutral factor . . . .'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109,

15  1138-39 (9th Cir. 2009) (citing *Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 931 (9th Cir. 2003)).   The effect of

16  preliminary relief here would be contained to the parties in this case.   It would only impact non-parties to the

17  extent Defendants are using a non-party service to launder the funds or place them at risk of loss.   *See* Fed. R.

18  Civ. P. 65(d)(2).   Temporary restraining orders "should be restricted to serving their underlying purpose of

19  preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no

20  longer." *Granny Goose Foods Inc. v. Teamsters*, 415 U.S. 423, 438-39 (1974).   That is all that Plaintiff seeks

21  to accomplish here.   Plaintiff thus requests that its TRO be granted, so that the "status quo" can be preserved

22  until a formal hearing and decision on Plaintiff's motion for a preliminary injunction.   *See Amaretto Ranch

23  Breedables*, 2010 WL 5387774, at *2 n.3 (N.D. Cal. Dec. 21, 2010) (granting TRO and recognizing that

24  "Defendant will have a complete opportunity to challenge [the court's merits] determinations at the preliminary

25  injunction hearing.").

26          Courts have held that "the public interest in preserving the illicit proceeds . . . for restitution to . . .

27  victims is great." *F.T.C. v. Affordable Media, LLC*, 179 F.3d 1228, 1236 (9th Cir. 1999) (affirming district

28  court's grant of preliminary injunction).   The public interest factor also weighs in favor of an injunction where

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE,
EARLY DISCOVERY, AND APPLICATION FOR TRO**

it would deter similar schemes. *Lazor v. Univ. of Conn.*, 560 F. Supp. 3d 674, 685 (D. Conn. 2021) (deterrence of future violations served the public interest and supported the grant of a preliminary injunction); *see also Concheck v. Barcroft*, No. 2:10-cv-656, 2010 WL 4117480, at *3 (S.D. Ohio Oct. 18, 2010) (public interest served where a preliminary injunction may deter others from orchestrating fraudulent investment schemes); *Westernbank P.R. v. Kachkar*, No. CIV. 07–1606 (ADC/BJM), 2008 WL 8089778 (D.P.R. July 23, 2008) (granting preliminary injunction freezing assets in part because granting the injunction served the public interest in deterring future fraud schemes). Here an injunction order would show that crypto is not beyond the reach of the law.

### D.    Notice Is Not Required Here

This Court is authorized and empowered to issue a TRO before notice is provided. While there are "'very few' circumstances justifying the issuance of an *ex parte* TRO," *Rovio Entm't Ltd. v. Royal Plush Toys, Inc.*, 907 F. Supp. 2d 1086, 1094 (N.D. Cal. 2012) (quoting *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006)), those circumstances are present here. Rule 65 permits courts to enter a temporary restraining order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition" and the movant's counsel "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Relevant here, courts have also issued TRO pursuant to an *ex parte* request where the adverse parties' identities are unknown. *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Despite Plaintiff's attempts to identify them, Defendants' identities are unknown. By this motion, Plaintiff intends to obtain this information through expedited discovery. *See Heissenberg v. Doe*, 2021 WL 8154531, at *3 (S.D. Fl. Apr. 23, 2021) (recognizing order granting expediting discovery in conjunction with order granting temporary restraining order proper where defendant's identity is unknown).

For the foregoing reasons, a TRO is warranted.

///

///

///

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**
ACTIVE 715519581v3

1

## VI.     <u>CONCLUSION</u>

2

For the reasons discussed above, Plaintiff respectfully requests that the Court grant its request for (1) a

3 temporary restraining order to freeze the account where the stolen assets are located and preclude Defendants

4 from taking any actions to transfer the stolen funds, (2) early discovery, and (3) an order authorizing service

5 via NFT.

6

7 DATED:  October 14, 2025                                  GREENBERG TRAURIG, LLP

8

9                                                                           By */s/ Michael Burshteyn*
                                                                                 Michael Burshteyn
10                                                                            Marcelo Barros
                                                                                 Kristin O'Carroll
11                                                                            101 Second Street, Suite 2200
                                                                                 San Francisco, California 94105
12                                                                            Telephone: 415.655.1300
                                                                                 Facsimile: 415.707.2010
13                                                                            Michael.Burshteyn@gtlaw.com
                                                                                 Marcelo.Barros@gtlaw.com
14                                                                            Kristin.OCarroll@gtlaw.com

15                                                                            Attorneys for Plaintiff,
                                                                                 *Legacy Investments Holdings, LLC*
16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ALTERNATIVE SERVICE, EARLY DISCOVERY, AND APPLICATION FOR TRO**
ACTIVE 715519581v3